**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES,

      Plaintiff,

  vs.

JORGE NEVAREZ-LEDEZMA,

      Defendant.

No. 2:19-CR-01379-KG-KRS
No. 2:20-CV-01144-KG-KRS

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

In June 2019, Defendant Jorge Nevarez-Ledezma pleaded guilty to one count of

possession with intent to distribute a mixture and substance containing methamphetamine and

one count of possession of a firearm in furtherance of a drug trafficking crime. On November 4,

2020, Nevarez-Ledezma filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct

Sentence by a Person in Federal Custody. (CV Doc. 1).[1] The Government filed a response brief

on January 15, 2021 (CV Doc. 7), and Nevarez-Ledezma filed a reply on February 1, 2021 (CV

Doc. 8). The undersigned, having considered the parties' submissions and the record,

RECOMMENDS that Nevarez-Ledezma's motion be DENIED IN PART as specified herein.

## I. BACKGROUND

In February 2019, Nevarez-Ledezma was charged via complaint with violations of 21

U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c). (CR Doc. 1). An indictment including a single charge

under each statutory provision followed. (CR Doc. 18). Public Defender Daniel Rubin was

appointed to represent Nevarez-Ledezma. (CR Doc. 2).

---

[1] All citations to "CV Doc." refer to documents filed in the civil case, CV 20-1144 KG/KRS. All citations to "CR Doc." refer to documents filed in the criminal case, CR 19-1379 KG/KRS.

On June 25, 2019, Nevarez-Ledezma entered into a Rule 11(c)(1)(C) plea agreement in which he agreed to plead guilty to one count each under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c). (CR Doc. 26). The plea agreement included, *inter alia*, a waiver of appellate and postconviction rights reading as follows:

> 22.     The defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a defendant the right to appeal a conviction and the sentence imposed. Acknowledging that, the defendant knowingly waives the right to appeal the defendant's conviction(s) and any sentence, as well as any sentence imposed below or within the Guideline range upon a revocation of supervised release in this cause number, including any fine, imposed in conformity with this Fed. R. Crim. P. 11(c)(1)(C) plea agreement, as well as any order of restitution entered by the Court. In addition, the defendant agrees to waive any collateral attack to the defendant's conviction(s) and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241, 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance.

(*See id.* at 7-8).

At a plea hearing that same day before United States Magistrate Judge Gregory B. Wormuth, after being sworn in, Nevarez-Ledezma acknowledged his understanding of, among other things, his right to a trial and his right to have his plea hearing presided over by a district judge. (Ex. 1 at 2-4) (transcript of plea hearing).[2] After being told of the charges against him, the Government's burden of proof as to the elements of those charges, and the maximum penalties he faced, Nevarez-Ledezma stated that he had spoken with Rubin about the facts and circumstances of his case, that he was satisfied with Rubin's advice and representation, that he read the plea agreement from beginning to end before signing it, and that he was comfortable that he understood the terms. (*See id.* at 4-7). After Rubin summarized the effect of the plea agreement, including the waiver provision and other impacts on his rights and presence in the United States, Nevarez-Ledezma again affirmed his understanding. (*See id.* at 7-8). Judge

---

[2] All exhibits are to the Government's response (CV Doc. 7). Nevarez-Ledezma does not challenge the Government's evidentiary submission. (*See, e.g.*, CV Doc. 8 at 2) (citing plea colloquy).

Wormuth then specifically discussed the waiver provision of the plea agreement, which Nevarez-Ledezma again stated that he understood. (*See id.* at 9-10). After this discussion, Nevarez-Ledezma entered his guilty plea as to both counts, and he agreed with the Government's representations concerning what it would prove at trial. (*See id.* at 11-12). Judge Wormuth accepted the guilty plea, finding that Nevarez-Ledezma was competent, that he was aware of the nature of the charges and the consequences of a guilty plea, and that his plea was knowing, voluntary, and supported by sufficient facts. (*See id.* at 12). A presentence report ("PSR") was disclosed to Nevarez-Ledezma prior to his sentencing. (*See* CR Doc. 31).[3]

The Court accepted the plea agreement at a sentencing hearing on October 18, 2019. (*See* CR Doc. 42 at 15). Prior to the Court doing so, Nevarez-Ledezma stated through his attorney that he had thoroughly reviewed the PSR and that he had no substantive objections to the report. (*See id.* at 3).[4] The Court accepted the PSR and adopted the factual findings as its own. (*See id.* at 15). By operation of its acceptance of the plea agreement, the Court sentenced Nevarez-Ledezma to a total term of incarceration of 72 months and 5 years' supervised release, to run unsupervised if he is removed from the United States. (*See id.* at 16). Before the hearing ended, Nevarez-Ledezma once again affirmed that he was satisfied with Rubin's representation. (*See id.* at 19).

## II. LEGAL STANDARDS

### A. HABEAS RELIEF PURSUANT TO 28 U.S.C. § 2255

Section 2255 permits a federal inmate to "move the court which imposed the sentence to vacate, set aside or correct the sentence" on "the ground that the sentence was imposed in violation of the Constitution and laws of the United States, or that the court was without

---

[3] An earlier PSR, disclosed to Nevarez-Ledezma on August 30, 2019, lacked certain drug laboratory reports that appeared in the later PSR. (*Cf.* CR Doc. 28).

[4] After Rubin pointed out at the hearing that the PSR had a typographical error relating to offender characteristics (CR Doc. 42 at 3), the Court accepted the PSR as modified to eliminate the error (*see id.* at 15).

jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If the inmate shows "the sentence imposed was not authorized by law or is otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack," the Court shall "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* § 2255(b). In reviewing a Section 2255 motion, the Court presumes that the prior proceedings were lawful. *See Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989). The movant bears the burden of demonstrating the deprivation of a constitutional right. *See United States v. Kennedy*, 225 F.3d 1187, 1197 n.6 (10th Cir. 2000).

## B. EVIDENTIARY HEARING

A court must conduct a hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also, e.g.*, *United States v. Harrison*, 375 F. App'x 830, 833 (10th Cir. 2010) (unpublished); *United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996). "The purpose of an evidentiary hearing is to resolve conflicting evidence." *Anderson v. Att'y Gen. of Kan.*, 425 F.3d 853, 860 (10th Cir. 2005). But when the evidence allows the Court to resolve the § 2255 motion on the existing record, no evidentiary hearing is required. *Lopez*, 100 F.3d at 121. Allegations that are "vague, conclusory, or palpably incredible," rather than "detailed and specific," do not warrant an evidentiary hearing. *See Harrison*, 375 F. App'x at 833 (quoting *Machibroda v. United States*, 368 U.S. 487, 494-95 (1962)); *see also United States v. Hall*, 746 F. App'x 773, 776 (10th Cir. 2018) (unpublished) ("[G]eneral conclusory allegations of ineffective assistance of counsel impose no obligation on the district court to conduct an evidentiary hearing.").

Likewise, if the claims relate to occurrences in the courtroom or record evidence, then the Court need not conduct a hearing. *Machibroda*, 368 U.S. at 494-95.

### III. DISCUSSION

Nevarez-Ledezma raises multiple grounds for habeas relief. In Ground One, he contends that there was no factual basis to support his plea. In Ground Two, he claims that Rubin provided ineffective assistance by failing to challenge his indictment on duplicity grounds and by failing to challenge the factual basis underlying his firearm possession charge. In Ground Three, Nevarez-Ledezma alleges that Rubin provided ineffective assistance by refusing to appeal his conviction. Finally, Nevarez-Ledezma asserts in Ground Four that Rubin failed to provide adequate legal assistance by failing to seek suppression of certain evidence. Although the undersigned concludes that Nevarez-Ledezma is entitled to a hearing as to Ground Three, the record conclusively establishes that his remaining grounds for relief are due to be denied.

### A. FACTUAL BASIS TO SUPPORT PLEA

Nevarez-Ledezma argues in Ground One that the trial court should not have accepted his plea because there was no factual basis to support it. (CV Doc. 1 at 4). In response, the Government invokes the waiver provision of the plea agreement to contend that this claim is barred since Nevarez-Ledezma does not challenge Rubin's purportedly ineffective assistance in this claim and does not assert that his agreement was unknowing or involuntary. (CV Doc. 7 at 6-7). In his reply brief, Nevarez-Ledezma argues that he has implicitly challenged the knowing and voluntary nature of his plea agreement. (*See* CV Doc. 8 at 3) ("Under the [argument that] Petitioner's plea was not knowing and voluntary[il]y entered, most critical is the fact that the Magistrate Judge did not ensure that there was [a] sufficient factual basis upon which to accept a plea of guilt . . . ."). Because the facts and record in this case conclusively show that the waiver

provision bars Ground One, the undersigned recommends denial of habeas relief on this basis, and an evidentiary hearing need not be held. *See Anderson*, 425 F.3d at 860.

A waiver of postconviction rights is enforceable as to a § 2255 claim if (1) the claim falls within the scope of the waiver, (2) the defendant knowingly and voluntarily waived his postconviction rights, and (3) enforcement of the waiver would not result in a miscarriage of justice. *See, e.g.*, *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004). Here, the waiver provision straightforwardly waives "any collateral attack to the defendant's conviction(s) and any sentence . . . except on the issue of defense counsel's ineffective assistance" (CV Doc. 26 at 7-8) (emphasis added), and Ground One on its face does not raise a claim that Rubin provided ineffective assistance (*see* CV Doc. 1 at 4). Nor does Nevarez-Ledezma raise any of the permitted grounds for contending that enforcement of the waiver would result in a miscarriage of justice, and the undersigned does not find any evidence in the record suggesting that such grounds are present.[5] Therefore, the first and third *Hahn* factors are easily satisfied.

That leaves the knowing and voluntary nature of the waiver of rights. "Where a defendant challenges the underlying plea in addition to the appeal waiver in a plea agreement, [courts] 'consider whether a defendant's entire plea agreement was knowing and voluntary—not merely whether the defendant understood the particular rights he was giving up when he entered into the plea agreement.'" *United States v. Bell*, 843 F. App'x 138, 140 (10th Cir. 2021) (unpublished) (quoting *United States v. Rollings*, 751 F.3d 1183, 1188-89 (10th Cir. 2014)). The knowing and voluntary nature of a plea agreement may depend in some instances on whether the Court

---

[5] The four "miscarriage" situations identified by the Tenth Circuit are "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful" in a manner that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Hahn*, 359 F.3d at 1327 (quotation omitted).

engaged in a proper Rule 11 colloquy, *see Hahn*, 359 F.3d at 1325, which in turn requires considering whether the Court adequately determined that there was a factual basis for the plea, *see* Fed. R. Crim. P. 11(b)(3). Considering Nevarez-Ledezma's motion and reply brief arguments in this light, Ground One may be liberally construed as asserting that his plea agreement was not knowing and voluntary because it lacked a proper factual basis. *See Bell*, 843 F. App'x at 140 (citing *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). In other words, the question of whether the waiver provision is enforceable is arguably "entangled" with the merits of his contention in Ground One. *See United States v. Ataya*, 884 F.3d 318, 322 (6th Cir. 2018) (citing, *e.g.*, *Rollings*, 751 F.3d at 1189-90).

Nevarez-Ledezma bears the burden of establishing that his plea agreement was unknowing or involuntary. *See, e.g.*, *United States v. Cudjoe*, 634 F.3d 1163, 1166 (10th Cir. 2011). The issue "is a question of law. . . that must be based on 'the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused.'" *United States v. Tanner*, 721 F.3d 1231, 1233 (10th Cir. 2013) (quotation omitted). "A properly conducted plea colloquy, particularly one containing express findings, will, in most cases, be conclusive on the waiver issue, in spite of a defendant's post hoc assertions to the contrary." *Id.* (citing *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). Indeed, "either the express language of the plea agreement, if sufficiently clear, detailed, and comprehensive, or the probing inquiry of a proper Rule 11 colloquy could be enough to conclude the waiver was knowing and voluntary. But the synergistic effect of both will often be conclusive." *Id.* at 1234 (citing *Hahn*, 359 F.3d at 1325).

The record illustrates that Nevarez-Ledezma's plea agreement was knowing and voluntary when considering either or both of the agreement text and the Rule 11 colloquy. The

plea agreement itself states that it is "freely and voluntarily made and is not the result of force, threats or promises" outside of those described in the agreement. (CR Doc. 26 at 8). The agreement also states that Nevarez-Ledezma was knowingly waiving his jury trial, appellate, and postconviction rights. (*Id.* at 1-2, 7-8). The agreement further sets out Nevarez-Ledezma's understanding of his rights, the penalty that could be imposed, and the factual basis of his plea. (*See, e.g.*, *id.* at 1-8). In particular, Nevarez-Ledezma discussed the specific factual bases underlying the charged crimes, and he expressly admitted that there was "a factual basis for each element of the crime(s) to which" he was pleading guilty. (*See id.* at 4-5). This language in the plea agreement, along with Nevarez-Ledezma's execution of that agreement, sufficiently establishes that the plea and all waivers contained therein were knowingly and voluntarily made.

The record also reflects an adequate colloquy between Nevarez-Ledezma and Judge Wormuth under the requirements of Rule 11. (*See* Ex. 1). Judge Wormuth questioned Nevarez-Ledezma regarding whether he had time to consult his attorney about the facts and circumstances of his case, whether he had fully discussed his plea agreement with his attorney, and whether he was satisfied with his attorney's advice and representation. (*See, e.g.*, *id.* at 6). Judge Wormuth also questioned Nevarez-Ledezma regarding whether he fully understood all of the terms of the plea agreement. (*See id.* at 6-7). Moreover, after Judge Wormuth discussed the elements of the charges at issue and the Government expressly described the facts underlying them, Nevarez-Ledezma affirmed that the Government's assertions were factually true. (*See id.* at 4-6). Finally, Judge Wormuth explained the impact of the waiver provision of the plea agreement, and Nevarez-Ledezma confirmed his understanding of this language. (*See id.* at 10). Based on the colloquy, Judge Wormuth found that Nevarez-Ledezma fully understood the charges, the terms of the plea, and the consequences of entry into the plea agreement, and that the plea was

knowingly and voluntarily made. (*See, e.g.*, *id.* at 12-13).

Nevarez-Ledezma also points to nothing in his background and experience that undermines the knowing and voluntary nature of the agreement as evidenced by his execution of the agreement or his statements and conduct at the colloquy. *Cf. Tanner*, 721 F.3d at 1233. The overall record illustrates that Nevarez-Ledezma possessed an adequate education, understanding, and overall state of mind to comprehend the terms of his agreement and to enter into it voluntarily. (*See, e.g.*, Ex. 1 at 2-3) (denying any influences that might impact understanding); (CR Doc. 31 at 10) (discussing education and fluency in two languages); (CR Doc. 42 at 8) (taking off translation headphones due to understanding of English).

Although Nevarez-Ledezma cites *Henderson v. Morgan*, 426 U.S. 637 (1976), to argue that his plea agreement was not knowing and voluntary (*see* CV Doc. 8 at 3), that case is inapposite. In *Henderson*, the Supreme Court held that the defendant's plea to second-degree murder was not knowingly and voluntarily made because, in addition to statements made at his sentencing suggesting an absence of intent, "there was no discussion [either with his attorney or at the colloquy] of the elements of the offense of second-degree murder, no indication that the nature of the offense had ever been discussed with [him], and no reference of any kind to the requirement of intent to cause the death of the victim." *Henderson*, 426 U.S. at 642-43. Here, by contrast, the elements of Nevarez-Ledezma's charges were expressly stated both in his plea agreement and at his colloquy, and in both cases Nevarez-Ledezma acknowledged that he understood these matters and affirmed that there was a factual basis to support the elements of his charges. Nevarez-Ledezma does not point to any statements made at his colloquy or sentencing that suggest anything to the contrary. Accordingly, *Henderson* provides no grounds for concluding that Nevarez-Ledezma's plea was made unknowingly and involuntarily.

On review of the record, the undersigned concludes that either the express language of the plea agreement or the Rule 11 colloquy are sufficient to establish the knowing and voluntary nature of Nevarez-Ledezma's plea agreement. Further, "the synergistic effect of *both* [is] conclusive" on this question. *See Bell*, 843 F. App'x at 140-41 (quoting *Tanner*, 721 F.3d at 1234) (emphasis added) (affirming enforcement of plea waiver where defendant signed similar agreement and engaged in similarly sufficient colloquy). Because all three *Hahn* factors are therefore satisfied, the postconviction waiver provision in the plea agreement bars Ground One, and the Court may deny habeas relief as to this ground without further examining Nevarez-Ledezma's arguments concerning the factual basis for his plea.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

To prove ineffective assistance of counsel, a habeas petition must demonstrate (1) that his attorney's performance was deficient and (2) that he suffered prejudice as a result. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, the habeas petitioner must "identify the acts of counsel that are alleged not to have been the result of reasonable professional judgment" and show that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. Put another way, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. To show prejudice, the petitioner must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The failure to establish either of these

prongs—performance or prejudice—is sufficient to warrant denial of the petition. *See, e.g.*, *id.* at 697; *see also, e.g.*, *United States v. Taylor*, 492 F. App'x 941, 945 (10th Cir. 2012) (unpublished) (finding no need to reach prejudice inquiry where deficiency not established).

In the context of a guilty plea, the prejudice prong of an ineffective-assistance claim requires a showing "that the constitutionally ineffective performance 'affected the outcome of *the plea process.* In other words . . . that there is a reasonable probability that, but for counsel's errors, *he would not have pleaded guilty* and would have insisted on going to trial." *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)) (emphasis and alteration in *Miller*). Courts applying this prejudice standard "will often review the strength of the prosecutor's case as the best evidence of whether a defendant in fact would have changed his plea and insisted on going to trial." *Id.*

i.    *Duplicity*

In Ground Two, Nevarez-Ledezma contends that if Rubin had properly managed his case, "it would have been more than obvious" that Count Two—brought pursuant to 18 U.S.C. § 924(c)—"charges two separate and distinct offenses in the same count[,] subjecting the Indictment to dismissal." (CV Doc. 1 at 5). The Government's response presents three arguments to the contrary: that the record establishes that Rubin conducted an adequate investigation into the case; that Rubin's failure to file a motion to dismiss on the issue of duplicity did not amount to constitutionally deficient representation; and that Nevarez-Ledezma did not suffer prejudice in any event. (CV Doc. 7 at 9-12).

"Duplicity is defined as the joinder of two or more distinct and separate criminal offenses in the same count of an indictment." *United States v. Miller*, 891 F.3d 1220, 1229 (10th Cir. 2018) (quoting *United States v. Schneider*, 594 F.3d 1219, 1228 n.8 (10th Cir. 2010)). "The

dangers of duplicity are three-fold: (1) [a] jury may convict a defendant without unanimously agreeing on the same offense; (2) [a] defendant may be prejudiced in a subsequent double jeopardy defense; and (3) [a] court may have difficulty determining the admissibility of evidence." *United States v. Trammell*, 133 F.3d 1343, 1354 (10th Cir. 1998) (quotation omitted). "The proper way to challenge a duplicitous indictment is by a pretrial motion to elect." *United States v. Gann*, 159 F. App'x 57, 59 (10th Cir. 2006) (unpublished).

Count Two of Nevarez-Ledezma's indictment asserted a violation of 18 U.S.C. § 924(c). (*See* CR Doc. 18 at 1-2). That statutory provision states in relevant part that:

> any person who, *during and in relation to* any . . . drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, *uses or carries* a firearm, or who, <u>in furtherance of</u> any such crime, <u>possesses</u> a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime[, be subject to additional penalties].

18 U.S.C. § 924(c)(1)(A) (emphasis added).

Underlying Nevarez-Ledezma's argument in Ground Two is the contention that § 924(c)(1)(A) should be interpreted as creating two distinct criminal offenses. This reading of the statute is supported by Tenth Circuit precedent:

> A defendant may be charged for *two types* of weapon-related offenses under [§ 924(c)(1)(A)]. First, a defendant may be convicted for using or carrying a firearm. We have previously explained that in order to convict a defendant under § 924(c)(1)'s use or carry prong, the government must show (1) that the defendant used or carried a firearm and (2) that the weapon played an "integral role" in the underlying offense. Second, a defendant may, in certain circumstances, be convicted under § 924(c)(1) for possessing a firearm. Obtaining a conviction under the "possession" prong of § 924(c)(1) requires the government to prove (1) that the defendant possessed a firearm and (2) that the possession was "in furtherance of" a drug trafficking offense or crime of violence.

*United States v. Avery*, 295 F.3d 1158, 1172 (10th Cir. 2002) (internal citations omitted) (emphasis added), *abrogated on other grounds*, *United States v. O'Brien*, 560 U.S. 218, 235

(2010); *see also United States v. Lott*, 310 F.3d 1231, 1246 (10th Cir. 2002) (treating charge under § 924(c)(1)(A) as creating "two distinct offenses").

The fact that a single statutory provision creates more than one distinct criminal offense does not necessarily invalidate a criminal prosecution under that provision; for example, an indictment may make clear which of the multiple offenses is being charged under a single count by setting forth only the elements of that particular offense. *See, e.g.*, *United States v. Davis*, 365 F. App'x 972, 974 (10th Cir. 2010) (unpublished) (rejecting duplicity argument where defendant "was charged with two counts of only one of the offenses defined in [18 U.S.C.] § 111" and "[t]he indictment set forth the correct elements of this charge"). The problem Nevarez-Ledezma cites, however, is that Count Two of the indictment appears to charge him with *both* distinct and separate offenses created under § 924(c)(1)(A):

> On or about February 9, 2019, . . . JORGE NEVAREZ-LEDEZMA, *during and in relation to* a drug trafficking crime for which the defendant may be prosecuted in a court of the United States . . . knowingly *used and carried* a firearm, **and** <u>in furtherance of</u> such crime, <u>possessed</u> said firearm[,] [i]n violation of 18 U.S.C. § 924.

(CR Doc. 18 at 1-2) (redacted indictment) (emphasis added). To borrow language from a similar case, Nevarez-Ledezma essentially argues that Ground Two "collaps[ed] the two parts of [§ 924(c)(1)(A)] into one jumbled mess," resulting in a "garbled indictment [that] conflates the two [charges]" created by that statute. *See United States v. Pleasant*, 125 F. Supp. 2d 173, 183 (E.D. Va. 2000) (granting pretrial motion to dismiss similarly worded § 924(c) charges).

Without resolving the question, the undersigned finds significant support for Nevarez-Ledezma's argument that § 924(c)(1)(A) criminalizes two separate offenses and that the language of his indictment therefore resulted in a duplicitous charge. *See, e.g.*, *Miller*, 891 F.3d at 1229; *Avery*, 295 F.3d at 1172; *United States v. Martinez*, No. 18-cr-00100 MV, 2019 WL 4261736, at *2-3 (D.N.M. Sep. 9, 2019) (citing, *e.g.*, *Miller*, 891 F.3d at 1229; *Avery*, 295 F.3d

at 1172) (ruling § 924(c) charge duplicitous for reciting elements of both offenses created under the statute); *see also United States v. Woods*, 271 F. App'x 338, 343 (4th Cir. 2008) (unpublished) (citing, *e.g.*, *United States v. Brooks*, 438 F.3d 1231, 1237 (10th Cir. 2006)) (concluding that § 924(c) creates distinct offenses); *United States v. Gamboa*, 439 F.3d 796, 808-10 (8th Cir. 2006) (holding convictions sufficient where each offense under § 924(c) was charged under separate counts); *United States v. Combs*, 369 F.3d 925, 930-34 (6th Cir. 2004) (citing, *e.g.*, *Pleasant*, 125 F. Supp. 2d at 178) (reversing § 924(c) conviction erroneously mixing elements of two different offenses); *Pleasant*, 125 F. Supp. 2d at 177-83 (finding similar charge duplicitous). *But see United States v. Arreola*, 467 F.3d 1153, 1157 (9th Cir. 2006) (holding that § 924(c) bars two discrete acts but creates only one offense).[6] Nevertheless, none of these decisions concerned a challenge at the habeas stage, which requires a showing not only of inadequate attorney performance, but also prejudice to the defendant. Here, Nevarez-Ledezma's § 2255 challenge fails because he cannot show the requisite prejudice.

The undersigned finds a decision from the Western District of North Carolina, considering a habeas claim regarding a similarly worded charge under § 924(c), to be instructive. *See Booker v. United States*, No. 3:14-cv-00341-MOC, 2014 WL 7339186, at *6-7 (W.D.N.C. Dec. 23, 2014), *appeal dismissed sub nom. United States v. Booker*, 673 F. App'x 340 (4th Cir. 2017) (unpublished) (per curiam). In rejecting the defendant's *Strickland* claim on prejudice grounds, the court held as follows:

---

[6] The Government impliedly highlights the circuit split created by *Combs* and *Gamboa* on the one hand and *Arreola* on the other. (*See* CV Doc. 7 at 12). The Tenth Circuit has not formally decided "whether § 924(c) criminalizes two separate and distinct offenses" for duplicity purposes, *see United States v. Mazon*, No. 1:18-cv-02208-JCH, 2020 WL 1450566, at *2 (D.N.M. Mar. 25, 2020) (citing cases), since neither *Avery* nor *Lott* expressly dealt with duplicity challenges, *see Avery*, 295 F.3d at 1174-76 (concluding that charge of "possess[ing]" firearm "during and in relation to" trafficking crime was sufficient under a "liberal construction," given post-verdict timing of challenge); *Lott*, 310 F.3d at 1246 (finding evidence sufficient for conviction under "in furtherance of" language). Still, the conclusion that § 924(c)(1)(A) creates only one offense would be difficult to square with language in *Avery* and *Lott* expressly stating to the contrary.

Assuming Petitioner's best-case scenario, *i.e.* that 1) counsel raised a valid objection and 2) this court found the indictment duplicitous, this court cannot find that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." The Fourth Circuit has found that despite any duplicity in a charging document, a conviction for the offenses involving the "carry" or "use" and "possession" of a firearm in furtherance of a drug trafficking crime should stand where "the evidence was plainly sufficient to find that [defendant] committed each of the acts charged in the indictment." Here, Petitioner knowingly and intelligently entered a guilty plea. *See supra.* Thus, there is sufficient evidence to find that petitioner committed the offenses included in Count Three . . . [since] "a guilty plea is an admission of all the elements of the formal criminal charge[.]"

*Id.* at *7 (internal citations omitted). In short, where a habeas petitioner admits to the elements of *both* offenses in a duplicitous charge as part of a knowing and voluntary plea, the *Booker* court and others have found that the petitioner cannot establish prejudice under the *Strickland* analysis. *See id.*; *see also, e.g.*, *Bennett v. United States*, No. 1:12-cv-880, 2015 WL 12914353, at *4 (M.D.N.C. June 29, 2015) (holding that even if charge were duplicitous, "Petitioner's claim would still fail because he pled guilty knowingly and voluntarily after a full Rule 11 colloquy" in which he was "instructed by the Court as to the charge . . . and further instructed as to the elements of that charge . . ., thereby admitting all relevant elements"); *cf. United States v. Jackson*, 513 F. App'x 51, 54 (2d Cir. 2013) (unpublished) (rejecting habeas claim on prejudice grounds where evidence supported jury verdict that defendant's conduct violated elements of both § 924(c) offenses, notwithstanding duplicitous charge).

In this case, the undersigned has already concluded that Nevarez-Ledezma's plea agreement was knowing and voluntary. And in that agreement (*see* CR Doc. 26 at 2, 4-5)—as well as in his colloquy (*see* Ex. 1 at 4-6)—Nevarez-Ledezma admitted to a recitation of all elements to *both* offenses ostensibly created under § 924(c)(1)(A). In other words, Nevarez-Ledezma admitted that he acted both "in furtherance of" *and* "during and in relation to" a drug trafficking offense, and that he either "used, carried, or possessed" his firearm in each instance.

(*See* CR Doc. 26 at 2); (Ex. 1 at 5). This knowing and voluntary admission was sufficient to find that Nevarez-Ledezma was guilty of an offense under § 924(c)(1)(A), notwithstanding the disjunctive framing of his admission that he "used, carried, or possessed" his firearm. *See, e.g.*, *Lott*, 310 F.3d at 1246 (quoting *United States v. Powell*, 226 F.3d 1181, 1192 n.4 (10th Cir. 2000) ("[A] crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive."); *see also Bennett*, 2015 WL 12914353, at *4; *Booker*, 2014 WL 7339186, at *6-7.

Accordingly, Nevarez-Ledezma has not demonstrated prejudice as necessary for supporting his ineffective assistance of counsel claim on the basis of duplicity. Because the facts and record conclusively show this to be the case, an evidentiary hearing need not be held, *see Anderson*, 425 F.3d at 860, and this aspect of Ground Two may be denied.

ii.     *Challenge to Factual Basis of § 924(c) Charge*

Elsewhere in Ground Two, Nevarez-Ledezma claims that Rubin failed to adequately challenge his § 924(c) conviction on grounds that he "merely possess[ed] narcotics." (CV Doc. 1 at 5). As previously observed, "prejudice" in this context will often hinge on the strength of the Government's case. *See Miller*, 262 F.3d at 1072. Accordingly, the Government asserts that the evidence was more than sufficient to establish Nevarez-Ledezma's guilt as to Count Two. (*See* CV Doc. 7 at 13). The undersigned finds that the Government has the better of the argument.

At his plea hearing, the Government stated—and Nevarez-Ledezma conceded (Ex. 1 at 12)—that the following facts could be proven:

> [O]n February 9th, 2019, the defendant [Nevarez-Ledezma] entered a United States Border Patrol checkpoint on New Mexico Highway 11 in the District of New Mexico. Border Patrol agents discovered that the defendant was in possession of approximately 23 grams of a mixture and substance containing a detectable amount of methamphetamine, as well as a SIG Sauer 9mm pistol and 15 rounds of

ammunition. The defendant possessed the drugs with the intent to distribute them and the firearm in furtherance of the drug-trafficking offense.

(*Id.* at 11-12). Judge Wormuth then found that Nevarez-Ledezma's entry into his plea agreement was knowing and voluntary and that the plea was supported by sufficient facts. (*See id.* at 12).

Prior to his sentencing hearing, the Government shared with Nevarez-Ledezma a PSR that elaborated on these facts in greater detail. (*See* CR Doc. 31). Prior to his arrest, the U.S. Department of Homeland Security Border Drug Task Force obtained unspecified information suggesting that Nevarez-Ledezma was a mid-level narcotics dealer. (*Id.* at 5). Undercover agents then purchased a quantity of methamphetamine from Nevarez-Ledezma. (*See id.* at 5-6). When Nevarez-Ledezma appeared at a border patrol checkpoint on February 9, 2019, his vehicle was referred for secondary inspection due to his nervous activity and other matters. (*See id.* at 6). After receiving permission to search the vehicle and conducting a pat-down, agents discovered a firearm that Nevarez-Ledezma claimed belonged to him, ammunition, and a plastic baggie that contained methamphetamine and that Nevarez-Ledezma claimed was "meth and it is mine." (*See id.*). Agents also discovered that Nevarez-Ledezma and his traveling companion were collectively carrying well over $5,000.00 in U.S. currency. (*See id.*). Through Rubin, Nevarez-Ledezma stated at his sentencing hearing that he and his attorney had a chance to thoroughly review the PSR and expressly declined to object or seek corrections to the report's discussion of these facts (*see* CR Doc. 42 at 3), and the Court accepted the plea agreement and adopted the PSR's factual findings (*see id.* at 15).

The PSR further stated that if convicted at trial, Nevarez-Ledezma's offense level would have been 28, resulting in a total guideline imprisonment range of 138 to 157 months. (*See* CR Doc. 31 at 13). By instead accepting responsibility for his actions via acceptance of the plea agreement and his statement at the colloquy, the PSR calculated Nevarez-Ledezma's offense

level at 25 (*see id.* at 7-8), and it noted that the plea agreement reduced his exposure (*see id.* at 13) by resulting in 72 months' incarceration (*id.* at 16). At the sentencing hearing, the Government acknowledged that this sentence, while "significant," also amounted to "a significant departure from what the defendant was facing under the Guidelines." (CR Doc. 42 at 9). These findings, too, were accepted by the Court when it imposed Nevarez-Ledezma's 72-month sentence. (*See id.* at 15-17).

In short, Judge Wormuth found that Nevarez-Ledezma's plea was voluntary, knowing, and properly supported by the facts, and the Court's adoption of the PSR effectively resulted in further findings that there was factual support for his charges and that Nevarez-Ledezma likely benefited from the sentence in the plea agreement. These findings, which the undersigned agrees with and adopts, support the conclusion that even without the allegedly deficient representation of counsel, Nevarez-Ledezma would not have gone to trial. Under these circumstances, the strength of the Government's case and the sentencing benefit that he received fatally undermine Nevarez-Ledezma's prejudice argument and foreclose this ineffective-assistance claim.

Nevarez-Ledezma belatedly states that his conviction under § 924(c) was premised on him "merely possessing narcotics," rather than possessing them with intent to distribute. (*See* CV Doc. 1 at 5). He further states that the available facts do not show that his firearm possession was "in furtherance of" any trafficking crime, suggesting that he could have pursued a defense against the § 924(c) charge on this basis had he gone to trial. (*See id.*). Yet these assertions are contradicted by Nevarez-Ledezma's written and oral declarations upon his acceptance of the plea agreement, in which he admitted to possession with the intent to distribute and possession of a firearm in furtherance of that offense. *See, e.g.*, *Blackledge*, 431 U.S. at 73-74 ("Solemn declarations in open court carry a strong presumption of verity."). Moreover, Nevarez-Ledezma

expressly waived all defenses that would have been available had he gone to trial (*see* CR Doc. 26 at 6), and he affirmed this waiver at his plea hearing (*see* Ex. 1 at 3-4). And in accepting this plea agreement, Nevarez-Ledezma "received precisely the sentence he agreed to in the plea agreement. Receiving a predetermined and demonstrably favorable sentence strongly suggests he would not have refused the agreement even if fully informed." *Miller v. Janecka*, 558 F. App'x 800, 805 (10th Cir. 2014) (unpublished). If anything, Nevarez-Ledezma's decision to accept this plea agreement and sentence under these circumstances—in light of the case against him, his sworn admission to the factual basis of the charge, his knowing and voluntary decision to enter into the plea, and his receipt of exactly the sentence he agreed to—serves to affirm, rather than "attack[,] the voluntary and intelligent character of the guilty plea." *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

In summary, the record conclusively shows that Nevarez-Ledezma is not entitled to relief as to his claim in Ground Two that Rubin failed to adequately attack the factual basis to his § 924(c) charge. As such, a hearing need not be held, and this ground for relief should be denied.

iii.    *Failure to File Appeal*

In Ground Three, Nevarez-Ledezma claims that Rubin provided ineffective assistance by ignoring his instruction to file an appeal premised on a purported absence of factual basis to his convictions. (*See* CV Doc. 1 at 7). The Government responds that Nevarez-Ledezma could not have been prejudiced by Rubin's purported failure because an appeal of that nature would have been barred under the appellate waiver provision of the plea agreement. (*See* CV Doc. 7 at 14-16). Nevarez-Ledezma counters that this waiver argument fails under the Supreme Court's recent decision in *Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738 (2019). (CV Doc. 8 at 6).

The Supreme Court has

> long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.

*Garza*, 139 S. Ct. at 746 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). Put simply, "[i]f [defense counsel] heard [a defendant's] request for an appeal, it would be professionally unreasonable for her not to file a notice of appeal." *United States v. Orozco-Sanchez*, 804 F. App'x 952, 962 (2020) (unpublished) (citing, *e.g.*, *Garza*, 139 S. Ct. at 746; *Flores-Ortega*, 528 U.S. at 477).

In *Garza*, the Supreme Court clarified that the presence of an appellate waiver provision in a plea agreement does not override the deficient nature of a counsel's performance when a criminal defendant requests that an appeal be filed. *See* 139 S. Ct. at 746. That is because "simply filing a notice of appeal does not necessarily breach a plea agreement, given the possibility that the defendant will end up raising claims beyond the waiver's scope. And in any event, the bare decision whether to appeal is ultimately the defendant's, not counsel's, to make." *Id.* Therefore, "[w]here . . . a defendant has expressly requested an appeal, counsel performs deficiently by disregarding the defendant's instructions" even where the defendant's plea agreement contains an appellate waiver. *See id.*

Further, "prejudice is presumed 'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken.'" *Id.* at 744 (quoting *Flores-Ortega*, 528 U.S. at 484). In such cases, after all, "counsel's deficient performance has deprived respondent of more than a *fair* judicial proceeding; that deficiency deprived [the defendant] of the appellate proceeding altogether." *Flores-Ortega*, 528 U.S. at 483. And despite the Government's argument to the contrary, "an appeal waiver does not complicate this

straightforward application" of the prejudice presumption in these cases, since the defendant "retain[s] a right to appeal at least some issues despite the waivers he signed." *See Garza*, 139 S. Ct. at 747. As Nevarez-Ledezma correctly observes (*see* CV Doc. 8 at 6), the apparent frivolity of an appeal does not change this rule, either: the Supreme Court "has made clear that when deficient counsel causes the loss of an entire proceeding, it will not bend the presumption-of-prejudice rule simply because a particular defendant seems to have had poor prospects." *Garza*, 139 S. Ct. at 747; *see also id.* at 748 ("This Court has already rejected attempts to condition the restoration of a defendant's appellate rights forfeited by ineffective counsel on proof that the defendant's appeal had merit."). Therefore, where an attorney's failure to notice an appeal deprives the defendant of an appeal he would have otherwise pursued, the presumption of prejudice applies "regardless of whether the defendant has signed an appeal waiver." *Id.* at 747.

Here, Nevarez-Ledezma straightforwardly alleges under penalty of perjury that he instructed Rubin to file an appeal as to his convictions and that Rubin did not do so. (CV Doc. 1 at 7). If this is true—that is, if Nevarez-Ledezma can establish that he would have pursued an appeal but for Rubin's failure to notice one despite his express instructions—then *Garza* requires that Nevarez-Ledezma be afforded habeas relief on the basis of ineffective assistance. *See, e.g.*, *Orozco-Sanchez*, 804 F. App'x at 962 (citing, *e.g.*, *Garza*, 139 S. Ct. at 746). The Government does not argue that any other outcome is permissible under *Garza*; in fact, the Government altogether fails to discuss *Garza* or *Flores-Ortega*, despite their clear relevance to Nevarez-Ledezma's claim. (*Cf.* CV Doc. 7 at 13-16).

The complicating factor here is that Rubin has provided an affidavit, also sworn under penalty of perjury, claiming that Nevarez-Ledezma did not ask him to file an appeal on any issue "[a]t [any] point after sentencing." (Ex. 6 ¶ 4). Even if this were true, however, habeas relief

would not necessarily be foreclosed to Nevarez-Ledezma:

> In those cases where the defendant [does not] instruct[] counsel to file an appeal . . . the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Flores-Ortega*, 528 U.S. at 478 (internal citations omitted). Under this inquiry,

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id.* at 480 (internal citations omitted).

By contrast to the circumstances where "counsel has a constitutionally imposed duty to consult," the Supreme Court has recognized at least "two examples of when it would be reasonable for an attorney <u>not</u> to consult [with] a client about appealing." *United States v. Herring*, 935 F.3d 1102, 1108 (10th Cir. 2019).

> First, suppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses

satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant <u>does not express any interest in appealing</u>, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable," as a constitutional matter, in not consulting with such a defendant regarding an appeal.

Second, suppose a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult. In some cases, counsel might then reasonably decide that he need not repeat that information.

*Id.* (quoting *Flores-Ortega*, 528 U.S. at 479-80) (cleaned up).

Analysis of these issues here would be premature at this stage, since there is a factual dispute concerning whether Nevarez-Ledezma asked Rubin to file an appeal on his behalf. *Compare* (CV Doc. 1 at 7), *with* (Ex. 6 ¶ 4). Further, even assuming that such a request was not made, the present record does not resolve the questions of whether Rubin adequately consulted with Nevarez-Ledezma regarding an appeal and, if not, whether that failure itself amounted to ineffective assistance. An evidentiary hearing is required to resolve the conflicting evidence. *See Anderson*, 425 F.3d at 860; *see also* 28 U.S.C. § 2255(b) (obviating need for hearing only where the record "conclusively show[s] that the prisoner is entitled to no relief").

For these reasons, the undersigned recommends that counsel be appointed for Nevarez-Ledezma and that a hearing be held on the aforementioned issues following the Court's resolution of his remaining grounds for relief and the other recommendations made herein.

iv.     *Failure to File Motion to Suppress*

In Ground Four, Nevarez-Ledezma claims that Rubin rendered ineffective assistance by failing to file a motion to suppress evidence on grounds that he was illegally detained and searched at a Customs and Border Patrol (CBP) checkpoint. (*See* CV Doc. 1 at 8). Among other arguments, the Government contends that Nevarez-Ledezma was not prejudiced by Rubin's failure to file a motion because agents are granted significant leeway to engage in detentions and

questioning at CBP checkpoints, and at any rate the agents developed reasonable suspicion to expand their detention and search activities after stopping him. (*See* CV Doc. 7 at 16-19).

Nevarez-Ledezma arguably concedes in his reply brief that his detention and search were permissible under the United States Constitution, contending instead that these actions were illegal under the Constitution of the State of New Mexico:

> While it[']s true that under federal law, border agents do not need to obtain a warrant to search a lawfully stopped vehicle if there is probable cause to believe that the vehicle contained evidence of a crime . . ., the New Mexico Constitution mandates that a warrantless search of a[n] automobile requires both probable cause and exigent circumstances.

(*See* CV Doc. 8 at 6-7) (internal citations omitted). But if Ground Four is premised on the theory that Rubin should have sought suppression of the Government's evidence under the New Mexico state constitution, this ground may be denied with little discussion. Federal and state courts alike recognize that state-law constitutional principles concerning searches and seizures do not govern prosecutions under federal law in federal court. *See, e.g.*, *United States v. Diaz*, No. 12-cv-00482 LH/KBM, 2014 WL 12789665, at *4-6 (D.N.M. July 2, 2014) (rejecting § 2255 due process challenge premised on officer's alleged violation of New Mexico state constitution); *see also* *State v. Cardenas-Alvarez*, 25 P.3d 225, 232-33 (N.M. 2001) (observing that state constitutional standards on evidence admissibility "will not affect any prosecution that might be brought against Defendant in federal court"); *cf. State v. Gallegos*, 70 P.3d 1277, 1280 (N.M. Ct. App. 2003) (recognizing that evidence seized by border patrol agents in violation of New Mexico's state constitution "can and will be excluded from use *in state proceedings*") (emphasis added). Nevarez-Ledezma does not show how a challenge of the Government's evidentiary submission on state-law principles that have no application in a federal prosecution could have succeeded, meaning that he has not shown that he was prejudiced by Rubin's failure to file a motion to suppress on such grounds.

Even if the Court concludes that Nevarez-Ledezma has not abandoned a Fourth Amendment challenge to his detention and search, he still cannot show the requisite prejudice. Federal courts have long recognized "that no individualized suspicion is necessary to stop, question, and then selectively refer motorists to a secondary inspection checkpoint, and that Border Patrol agents have virtually 'unlimited discretion to refer cars to the secondary inspection area.'" *United States v. Ludlow*, 992 F.2d 260, 263 (10th Cir. 1993) (internal citations omitted). Although some limitations are in place, "the governmental needs at permanent Border Patrol checkpoints [can] justify governmental intrusion unacceptable in other contexts":

> Under a routine inquiry, the detention and questioning at a permanent checkpoint "involves only a brief detention," and neither the vehicle nor its occupants are searched; visual inspection of the vehicle is limited to what can be seen without a search. Border Patrol agents may question occupants of a vehicle concerning citizenship and customs matters and ask them to explain suspicious circumstances or behavior. Detention and questioning based solely on suspicious circumstances is warranted because of the accepted government policy of ensuring only authorized individuals enter into this country and to prevent the smuggling of contraband. . . . [Any] questioning as to suspicious circumstances must bear "a reasonable relationship to [the agent's] unique duties." . . .
>
> [I]f questioning reasonably related to immigration and customs matters and the agent's observations indicates suspicious circumstances, further questioning as part of the routine permanent checkpoint inquiry is permissible as long as the duration of the detention remains brief. If further inquiry within the time constraints of [precedent] creates a reasonable suspicion that a crime is or has been committed, further investigative detention, which is outside the scope of a routine inquiry, may be warranted. However, in the absence of facts justifying further investigative detention, a motorist may not be further detained pursuant to a routine inquiry without consenting to such detention.

*Id.* at 264 (cleaned up).

In *Ludlow*, after the defendant arrived at the primary inspection area of a Border Patrol checkpoint, the agents briefly asked him immigration-related questions but saw him exhibiting signs of nervousness and confusion. *See id.* at 262. The agent then referred the defendant to secondary inspection, in part "for further questioning as to the nervousness that he was

displaying." *See id.* At that time, the agent asked for and received consent from the defendant to inspect his car, at which time the agent's dog alerted to the presence of narcotics. *See id.* Relying on the aforementioned principles, the Tenth Circuit affirmed the district court's denial of the defendant's motion to suppress. *See id.* at 265. As to the events at the primary inspection area, the Tenth Circuit observed that the questioning was brief, that the agent's questions were appropriate, and that the circumstances including the defendant's "demeanor and appearance" justified the decision to further detain him at the secondary area. *See id.* The court also concluded that those circumstances permitted a reasonable suspicion that the defendant had committed a crime. *See id.* As to the secondary inspection area, the Tenth Circuit held that suppression was not warranted given that the defendant consented to being searched while properly detained. *Id.*

The evidence that the Government was expected to present at trial establishes that the relevant facts in this case are aligned with the facts and principles discussed in *Ludlow*.[7] Nevarez-Ledezma and a passenger arrived at the Deming (New Mexico) Station CBP checkpoint on February 9, 2019 at about 2:15 p.m. A CBP agent asked Nevarez-Ledezma immigration-related questions at the primary inspection area of the checkpoint, which resulted in nervous behavior by Nevarez-Ledezma including shaking hands and a tight grip of the steering wheel. Moreover, the agent observed that Nevarez-Ledezma's green card was damaged and that he and his vehicle met the description of a "be on the lookout" report from "a credible source of information."[8] In light of these matters, the agent directed Nevarez-Ledezma to a secondary

---

[7] The facts recited in this paragraph are taken from the CBP incident report pertaining to Nevarez-Ledezma's seizure on February 9, 2019. (*See* Ex. 7). The Government points to these facts in their response brief (*see* CV Doc. 7 at 18), and Nevarez-Ledezma has not challenged the facts related therein. Further, Nevarez-Ledezma conceded at his plea hearing that relevant facts pertaining to his February 9, 2019 detention were true (*see* Ex. 1 at 11-12), and he did not object to the PSR's presentation of similar facts prior to the Court's adoption of those facts at his sentencing hearing.
[8] Although the PSR notes that CBP agents had previously purchased methamphetamine from Nevarez-Ledezma in an undercover sting (*see* CR Doc. 31 at 4-5), the CBP incident report does not elaborate on the "credible source of information" that preceded Nevarez-Ledezma's detention at the checkpoint in February 2019.

questioning area for further inspection. After he moved to the secondary area, Nevarez-Ledezma was observed spraying cologne on himself, and he appeared to be irritable and anxious to proceed through the checkpoint. Nevarez-Ledezma also stated that he had just purchased his vehicle the previous day, leading agents to run a records check on the vehicle. In the meantime, a K-9 agent sought and received consent from Nevarez-Ledezma to search the vehicle, at which time Nevarez-Ledezma and the passenger exited the vehicle at the agent's request. The agent then conducted a *Terry* pat-down[9] and discovered the subject pistol in Nevarez-Ledezma's waistband. The agent also discovered a package in the pocket of a jacket in the driver's seat, and Nevarez-Ledezma admitted that the package contained methamphetamine. After Nevarez-Ledezma and his companion were secured, CBP agents conducted a further search of the vehicle and located additional weapons, after which time both individuals were taken into custody. An addendum to the CBP incident report suggests that all of these events—the initial and secondary questioning, the records check on the vehicle and its occupants, the consensual search of the vehicle, and the pat-down of Nevarez-Ledezma—occurred prior to 2:40 p.m., just over half an hour after Nevarez-Ledezma arrived at the CPB checkpoint.

As *Ludlow* and other decisions establish, the agents' questions concerning identification, citizenship and immigration status, vehicle contents, and vehicle ownership were appropriate in the course of a brief detention at an immigration checkpoint. *See, e.g.*, *Ludlow*, 992 F.2d at 265 & n.4 (citation omitted). *Ludlow* also establishes that the circumstances observed by the agents at the primary inspection area, including but not limited to Nevarez-Ledezma's "demeanor and appearance," his damaged green card, and his recent purchase of the vehicle, justified "further detention and questioning as part of a routine inquiry." *See id.* at 265. Once he moved to the

---

[9] *See generally Terry v. Ohio*, 392 U.S. 1 (1968).

secondary area, the agents' reasonable efforts to confirm vehicle ownership justified continued

detention even before Nevarez-Ledezma consented to a search. These circumstances are

effectively identical to those approved by the Tenth Circuit in *Ludlow*. *See id.* ("Mr. Ludlow was

informed that an NCIC check of his vehicle was being run, and at this juncture he consented to a

search of the suitcases. Shortly thereafter a dog alerted to the presence of contraband and the

marijuana was discovered."). Nevarez-Ledezma's use of cologne at this point reinforced the

reasonableness of further detention. *See, e.g.*, *United States v. Ahmed*, 825 F. App'x 589, 592

(10th Cir. 2020) (unpublished) (citing *United States v. Ludwig*, 641 F.3d 1243, 1248 (10th Cir.

2011)). As in *Ludlow*, Nevarez-Ledezma "does not dispute that he consented to a search of the

vehicle, or that his consent was voluntary." *See* 992 F.2d at 265 n.7. Nor does Nevarez-Ledezma

dispute that it was pursuant to this consensual search that the packet of methamphetamine was

discovered. Finally, Nevarez-Ledezma does not cite any factual basis or legal argument to

suggest that the pat-down of his person, which revealed the presence of a firearm, was improper.

Under Tenth Circuit precedent, Nevarez-Ledezma would have no viable basis to seek

suppression of the seized evidence, meaning that he was not prejudiced by Rubin's failure to file

a motion seeking such relief.

Nevarez-Ledezma raises two belated arguments for the first time in his reply brief: that

he was "illegally detained for over one and one-half hours," and that a discrepancy between the

amount of methamphetamine sent to a laboratory for testing and the amount received by the

laboratory implies that "someone tampered with the evidence." (*See* CV Doc. 8 at 7). "But

arguments advanced for the first time in a reply brief are waived." *United States v. Johnson*, 732

F. App'x 638, 652 n.11 (10th Cir. 2018) (citing *United States v. Beckstead*, 500 F.3d 1154, 1173

(10th Cir. 2007)). Further, Nevarez-Ledezma's claim concerning the length of his *entire*

detention does not establish that his detention prior to his grant of consent to search the vehicle was inappropriately lengthy. *See Ludlow*, 992 F.2d at 264 (noting that "further investigative detention, which is outside the scope of a routine inquiry, may be warranted" if an agent develops "reasonable suspicion that a crime is or has been committed").

Nevarez-Ledezma was not prejudiced by Rubin's failure to file a motion to suppress on the grounds raised. Because the record conclusively shows this to be the case, Ground Four is due to be denied, and a hearing need not be held.

## IV.  CONCLUSION

**IT IS, THEREFORE, RECOMMENDED** that the Court:

(1)    DENY Nevarez-Ledezma's § 2255 motion (CV Doc. 1) as to Grounds One, Two, and Four, and

(2)    that counsel be APPOINTED for Nevarez-Ledezma, and an evidentiary hearing be HELD before the undersigned, as to Ground Three of Nevarez-Ledezma's motion.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension of time must be filed in writing no later than seven (7) days from the date of this filing. A party must file any objections with the Clerk of the District Court within the fourteen (14) day period, together with any period for which an order is entered granting an extension of time, if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**