IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

vs.                                                                            No. 2:20-CV-01144 KG/KRS
                                                                           No. 2:19-CR-01379 KG

JORGE NEVAREZ-LEDEZMA,

    Defendant/Movant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Defendant/Movant Jorge Nevarez-Ledezma's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (CV Doc. 1).[1] The Honorable Kenneth Gonzales referred this case to the undersigned to recommend an ultimate disposition. (CV Doc. 20). On January 24, 2022, the Court held a hearing on the remaining issue in this case, at which Mr. Nevarez-Ledezma was represented by counsel and was present and testified via Zoom. Having considered the submissions of the parties, relevant law, and the evidence and witness testimony presented at the January 24, 2022 hearing, the Court recommends that Mr. Nevarez-Ledezma's Section 2255 Motion be denied.

**I.    Background**

In February 2019, Mr. Nevarez-Ledezma was charged in a complaint with violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c). (CR Doc. 1). He was later indicted for a single

---

[1] All citations to "CV Doc." refer to documents filed in the civil case, CV 20-1144 KG/KRS. All citations to "CR Doc." refer to documents filed in the criminal case, CR 19-1379 KG.

charge under each statutory provision, and Federal Public Defender Daniel Rubin was appointed to represent him. (CR Docs. 2, 18). On June 25, 2019, Mr. Nevarez-Ledezma entered into a Rule 11(c)(1)(C) plea agreement in which he agreed to plead guilty to one count each under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c). (CR Doc. 26). The plea agreement included, *inter alia*, a waiver of appellate and postconviction rights of any sentence below or within the Sentencing Guideline range and of a collateral attack under 28 U.S.C. §§ 2241 or 2255, "except on the issue of defense counsel's ineffective assistance." *Id.* at 7-8. On October 18, 2019, United States District Judge Kenneth Gonzales accepted the plea agreement and sentenced Mr. Nevarez-Ledezma to a total term of incarceration of 72 months and 5 years of supervised release, to run unsupervised if he is removed from the United States. (CR Doc. 42).

On November 4, 2020, Mr. Nevarez-Ledezma filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (CV Doc. 1). He raised the following claims: (1) there was no factual basis to support his plea; (2) his former counsel, Mr. Rubin, provided ineffective assistance by failing to challenge the indictment on duplicity grounds and by failing to challenge the factual basis underlying the firearm possession charge; (3) Mr. Rubin provided ineffective assistance by refusing to appeal Mr. Nevarez-Ledezma's conviction; and (4) Mr. Rubin provided ineffective assistance by failing to seek suppression of certain evidence. On June 28, 2021, the Court entered a Proposed Findings and Recommended Disposition ("PFRD") recommending that Mr. Nevarez-Ledezma's first, second, and fourth claims be denied, and that an evidentiary hearing be held on the third claim. (CV Doc. 10). On September 22, 2021, Judge Gonzales entered on order: (1) overruling Mr. Nevarez-Ledezma's objections to the PFRD; (2) adopting the PFRD; (3) denying Mr. Nevarez-Ledezma's first,

second, and fourth claims; and (4) ordering that counsel be appointed and an evidentiary hearing be conducted regarding Mr. Nevarez-Ledezma's claim that his counsel was ineffective for not filing an appeal of his conviction.  (CV Doc. 12).  Mr. Nevarez-Ledezma was appointed counsel and, on January 24, 2022, the Court held an evidentiary hearing.  (CV Docs. 13, 18).  At the hearing, Mr. Nevarez-Ledezma, Mr. Rubin, and Special Agent Jose Aleman, testified via Zoom, and a Spanish interpreter was present to interpret the proceedings for Mr. Nevarez-Ledezma.  (CV Doc. 18).

**II.     Legal Standard**

Section 2255 permits a federal inmate to "move the court which imposed the sentence to vacate, set aside or correct the sentence" on "the ground that the sentence was imposed in violation of the Constitution and laws of the United States[.]"  28 U.S.C. § 2255(a).  If the inmate shows "the sentence imposed was not authorized by law or is otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack," the Court shall "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).  In reviewing a Section 2255 motion, the Court presumes that the prior proceedings were lawful and the movant bears the burden of demonstrating the deprivation of a constitutional right.  *See United States v. Kennedy*, 225 F.3d 1187, 1197 n.6 (10th Cir. 2000); *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989).

To prevail on an ineffective assistance of counsel claim, a movant must establish that: (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) "the deficient performance prejudiced the defense."

3

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Thus, a movant who shows that his counsel failed to file a notice of appeal despite specific instructions to do so satisfies the deficient-performance prong of *Strickland*. Moreover, "if counsel does not file a requested appeal, a defendant is entitled to [a new] appeal without a showing that his appeal likely would have had merit." *United States v. Garrett*, 402 F.3d 1262, 1265 (10th Cir. 2005).

In addition, counsel has a duty to consult with clients about filing an appeal if "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. To comply with this duty to consult, counsel must "advis[e] the defendant about the advantages and disadvantages of taking an appeal" and "mak[e] a reasonable effort to discover the defendant's wishes." *Id.* at 478. To determine whether a rational defendant would want to appeal, courts must take into account the "totality of the circumstances," including "whether the conviction follows a trial or guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* at 480. Courts should also consider "whether the defendant received the sentence bargained for as part of the plea" and "whether the plea expressly reserved or waived some or all appeal rights." *Id.*

**III.     Discussion**

Mr. Nevarez-Ledezma claims that Mr. Rubin provided ineffective assistance of counsel by ignoring his instruction to file an appeal of his convictions. (CV Doc. 1) at 7. At the January 24, 2022 evidentiary hearing, Mr. Nevarez-Ledezma testified that he instructed Mr. Rubin to file an appeal based on his claim that he legally owned the firearm that was the basis for his Section 924(c) charge. (CV Doc. 19) at 47 (transcript of January 24, 2022 hearing) (Mr. Nevarez-Ledezma stating he asked his counsel to appeal: "The thing about the weapon, about the weapon because I was never pleased. It's something I had bought legally and in my name. It was in my name that I bought. Nothing wrong with a gun."). Mr. Nevarez-Ledezma stated this conversation with Mr. Rubin was in person and occurred after his plea hearing and prior to his sentencing hearing when he was incarcerated in Deming, New Mexico. *Id.* at 17, 48-50. He further testified that he often told Mr. Rubin that he was not pleased with the 72-month sentence they were bargaining for and that he thought: "[I]t is too much time that I am being given for a weapon that was legally purchased and is in my name." *Id.* at 17-20; 23. Mr. Nevarez-Ledezma stated that he did not ask Mr. Rubin to file an appeal after he was sentenced because he did not see Mr. Rubin after the sentencing hearing. *Id.* at 50-51.

Mr. Rubin testified that he met with Mr. Nevarez-Ledezma in person several times at the Luna County Detention Center in Deming, New Mexico and the Hidalgo County Detention Center in Lordsburg, New Mexico, and that they had multiple phone calls. *Id.* at 57-58, 71. Each time the spoke, they discussed the evidence against Mr. Nevarez-Ledezma and the plea agreement negotiations, and Mr. Rubin stated that he spent a lot of time going over the waiver of appeal rights with Mr. Nevarez-Ledezma. *Id.* at 71 (stating he went over the plea agreement

"with Mr. Nevarez-Ledezma on March 8th at Luna, on April 16th at Luna, on May 10th at Luna," and on "May 31st, when we finally got our final plea agreement, I visited him at Hidalgo in person," and that he "covered his waiver of appeal rights every time we talked about the plea agreement"). Specifically, Mr. Rubin explained to Mr. Nevarez-Ledezma that if he entered into the plea agreement, he could not at some later point say he was not guilty and appeal his sentence, but he would maintain his right to appeal ineffective assistance of counsel claims if he thought Mr. Rubin "messed up [his] case in any way." *Id.* at 72-73 (Mr. Rubin explaining that Mr. Nevarez-Ledezma could appeal issues such as: "[I]f I've miscalculated your guidelines, if I've gotten things wrong, if there's legal issues."). He also told Mr. Nevarez-Ledezma that he would have to appeal within fourteen days of the judgment being entered. *Id.* at 72. Finally, Mr. Rubin testified that, immediately following the in-person sentencing hearing, he said to Mr. Nevarez-Ledezma that since he received the sentence they requested, Mr. Rubin did not see any advantage in appealing. *Id.* at 60. He then asked Mr. Nevarez-Ledezma if he wanted to appeal and Mr. Nevarez-Ledezma answered, "No." *Id.*; *see also id.* at 79 (Mr. Rubin's testimony that after Mr. Nevarez-Ledezma was sentenced "he said he had no interest in appealing").

The Court finds Mr. Rubin's version of events more credible for several reasons. While Mr. Nevarez-Ledezma testified that he told Mr. Rubin to file an appeal, he could not remember the date he made this request other than it was made after the plea hearing and before his sentencing hearing. *See id.* at 48. Mr. Nevarez-Ledezma does not explain why he asked Mr. Rubin to file an appeal before he was sentenced, when at that time there was nothing to appeal. Moreover, Mr. Nevarez-Ledezma stated this conversation took place after his plea hearing when he was incarcerated in Deming, New Mexico, but Mr. Rubin explained that Mr. Nevarez-

6

Ledezma had been moved to the Hidalgo County Detention Center in Lordsburg, New Mexico, prior to the plea hearing. *Id.* at 58. In addition, Mr. Rubin provided detailed testimony about the dates he met with Mr. Nevarez-Ledezma and the specifics of what they discussed regarding the plea agreement and waiver of appellate rights, and he remembered that Mr. Nevarez-Ledezma did not ask him to file an appeal. Mr. Rubin further testified that if a client tells him they want to appeal, his standard practice is to file a Notice of Appeal and, if the basis of the appeal is ineffective assistance of counsel, to move to withdraw from the case after the appeal process is started. *Id.* at 81. None of that happened in this case, which supports a finding that Mr. Nevarez-Ledezma did not ask Mr. Rubin to file an appeal. Moreover, when Mr. Rubin communicated with Mr. Nevarez-Ledezma's family about returning personal property to them, his family did not mention an appeal, and when Mr. Rubin spoke with Mr. Nevarez-Ledezma by phone in January 2021, Mr. Nevarez-Ledezma did not mention an appeal. *Id.* at 87-88. Further, Mr. Rubin had no correspondence from Mr. Nevarez-Ledezma asking him to file an appeal. *Id.* at 89.

At the evidentiary hearing, Mr. Nevarez-Ledezma testified that he had difficulty understanding Mr. Rubin and his underlying criminal proceedings because Spanish is his first language and he required an interpreter. *Id.* at 12, 16. To the extent Mr. Nevarez-Ledezma is attempting to raise a new claim based on his lack of understanding English, he has not moved to amend his complaint so this claim is not properly before the Court. Moreover, upon cross-examination, Mr. Nevarez-Ledezma acknowledged that he told the judges at his plea and sentencing hearings that he understood what they were saying in English and did not ask for an interpreter. *Id.* at 24-28; 37-38. Indeed, at the sentencing hearing, Mr. Nevarez-Ledezma had a

headset on for Spanish interpretation, but he removed it early in the hearing and told Judge Gonzales that he understood English. *Id.* at 37-38; *see also* (CR Doc. 42) at 9 (transcript of sentencing hearing where Mr. Nevarez-Ledezma removed the headset providing Spanish interpretation and stated in English that he understands English).

In addition, Mr. Rubin testified that he brought an interpreter to his first meeting with Mr. Nevarez-Ledezma, but the interpreter was not used because Mr. Nevarez-Ledezma "spoke perfect English" and Mr. Rubin "had no concerns whatsoever" with Mr. Nevarez-Ledezma's understanding of English. (CV Doc. 19) at 68. He and Mr. Nevarez-Ledezma were able to effectively communicate in English about arranging a call with Mr. Nevarez-Ledezma's mother on Facetime and negotiating the plea agreement, and Mr. Nevarez-Ledezma never asked for Spanish interpretation of any documents in his case. *Id.* at 69-71, 89. Additionally, Special Agent Jose Aleman testified that he spoke with Mr. Nevarez-Ledezma and his attorney for a debrief, and that Mr. Nevarez-Ledezma spoke and understood English. *Id.* at 100. In opposing Special Agent Aleman being called as a witness, Mr. Nevarez-Ledezma's counsel at the evidentiary hearing stated that he was willing "to stipulate that to some extent Mr. Nevarez does understand English and that we could just stipulate that he—that was not the primary difficulty in communication with Mr. Rubin." *Id.* at 97. Consequently, the Court finds that the lack of an interpreter for Mr. Nevarez-Ledezma's conversations with Mr. Rubin does not support his claim of ineffective assistance based on failure to file an appeal.

Based on the foregoing, the Court finds that Mr. Nevarez-Ledezma did not clearly communicate a request for an appeal to Mr. Rubin. *See Flores-Ortega*, 528 U.S. at 477 (explaining that a request for an appeal must be made with "specific" or "express" instructions).

While Mr. Nevarez-Ledezma claims he did make such a request prior to his sentencing hearing, any such request was negated when Mr. Nevarez-Ledezma told Mr. Rubin after he had been sentenced that he did not want to appeal. (CV Doc. 19) at 60. The Court finds that Mr. Rubin's testimony about his conversations with Mr. Nevarez-Ledezma is credible and it is supported by the record in that neither Mr. Nevarez-Ledezma nor his family followed up about his alleged request for an appeal.

The Court further finds that Mr. Rubin sufficiently consulted with Mr. Nevarez-Ledezma about filing an appeal by advising him multiple times about the meaning of the appellate waiver in the plea agreement and the advantages and disadvantages of filing an appeal. *See* (CV Doc. 19) at 71-73. Mr. Rubin told Mr. Nevarez-Ledezma that it was unlikely he would have the grounds for an appeal because he was facing fifteen years based on two mandatory minimums if he did not enter into a plea agreement, and further explained that Mr. Nevarez-Ledezma would retain the right to appeal an ineffective assistance of counsel claim. *Id.* at 72. Mr. Nevarez-Ledezma's counsel for the evidentiary hearing argued that Mr. Rubin erred by only advising Mr. Nevarez-Ledezma about the advantages and disadvantages of an appeal prior to sentencing and failing to restate his appeal rights and tell him he could file an appeal after he had been sentenced. *Id.* at 101-02. First, Mr. Rubin did alert Mr. Nevarez-Ledezma that he could file an appeal after he had been sentenced by asking him at that time if he wanted to appeal, which he declined. Second, Mr. Nevarez-Ledezma provides no support for a finding that counsel is required to restate the advantages and disadvantages of an appeal after a defendant is sentenced when those have been adequately explained earlier in the proceedings. Indeed, the term "consult" is defined in *Flores-Ortega* as "advising the defendant about the advantages and

disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." 528 U.S. at 478. The Court finds that Mr. Rubin complied with these requirements in this case.

In the alternative, even if the duty to consult is not satisfied here, that does not constitute deficient performance. As set forth in *Flores-Ortega*, an attorney's performance is not deficient where there is no reason "to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. at 480. To determine whether a rational defendant would want to appeal, courts must consider "whether the conviction follows a trial or guilty plea," "whether the defendant received the sentence bargained for as part of the plea," and "whether the plea expressly reserved or waived some or all appeal rights." *Id.* Here, Mr. Nevarez-Ledezma's conviction followed a guilty plea, he received the sentence he bargained for as part of the plea, and he agreed to waive most of his appeal rights. Moreover, as Mr. Rubin testified, "there were no nonfrivolous grounds for an appeal" and a "similarly situated rational individual" would not want to appeal in these circumstances because Mr. Nevarez-Ledezma got the sentence he sought, there was "overwhelming evidence against" him, and there were no winnable legal issues he could appeal. (CV Doc. 19) at 79, 83-84. Therefore, the Court finds that Mr. Rubin's performance was not deficient because there is no reason to think that a rational defendant would want to appeal and Mr. Nevarez-Ledezma did not reasonably demonstrate to his counsel that he wanted to appeal.

### IV.     Conclusion

For the foregoing reasons, the Court finds that Mr. Nevarez-Ledezma has failed to prove that his attorney was ineffective for failing to file an appeal.  Accordingly, the Court recommends that Mr. Nevarez-Ledezma's remaining claim be denied.

**IT IS THEREFORE RECOMMENDED** that the remaining claim in Mr. Nevarez-Ledezma's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, (CV Doc. 1), be **DENIED** and this case be **DISMISSED with prejudice**.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c).  Written objections must be both timely and specific.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of de novo review by a district or appellate court.  In other words, if no objections are filed, no appellate review will be allowed.